**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| SQIP, LLC,<br><br>                    Plaintiff,<br><br>v.<br><br>Cambria Company, LLC<br><br>                    Defendant. | Civil Action No. __-cv-_____<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff SQIP, LLC files this Complaint against Cambria Company, LLC for willful infringement of U.S. Patent Nos. 9,511,516; 10,376,912; 10,730,806; 10,843,977; and 9,707,698 (collectively, the "Patents-in-Suit"), based upon Defendant's unauthorized manufacture, use, offer for sale, sale and/or importation of Defendant's infringing products accused herein.

## THE PARTIES

1.      Plaintiff SQIP, LLC ("SQIP" or "Plaintiff") is a Florida limited liability company having an address at 4121 Seaboard Road, Orlando, Florida 32808.

2.      Defendant Cambria Company, LLC ("Cambria" or "Defendant") is a Minnesota corporation with its headquarters at 31496 Cambria Avenue, Le Sueur, Minnesota 56058 and regular and established places of business located at 301 W. Vista Ridge Mall Drive, Suite 400, Lewisville, Texas 75067 and 5600 Nebraska Furniture Mart Dr., The Colony, Texas 75056. Cambria may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

3.      This action arises under the patent laws of the United States, 35 U.S.C. § 101, *et seq.* This Court's jurisdiction over this action is proper under 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1338 (jurisdiction over patent actions).

4.      This Court has personal jurisdiction over Cambria in accordance with due process and/or the Texas Long Arm Statute because, among other activities, Cambria conducts business in this State by, for example, "recruit[ing] Texas residents, directly or through an intermediary located in this state, for employment inside or outside this state." TEX. CIV. PRAC. & REM. CODE § 17.042(3). For instance, each of the employment listings below advertise openings at Cambria facilities in Colony, Texas and Dallas, Texas.



https://cambria.wd1.myworkdayjobs.com/cambria_careers?locations=17913c8ccf2d1001ba1ae4
7e9dac0000&locations=b503aa9b8c331001b9bfdf5dd42c0000

5.      Further, this Court has personal jurisdiction over Cambria because it has engaged, and continues to engage, in continuous, systematic, and substantial activities within this State, including the substantial marketing and sale of products within this State and this District. This Court has personal jurisdiction over Cambria because it has committed acts giving rise to SQIP's claims for patent infringement within and directed to this District, has derived substantial

revenue from its goods provided to individuals in this State and this District, and maintains regular and established places of business in this District, including at least its facilities and showrooms in The Colony and Lewisville.

6.      Cambria has committed and continues to commit acts in violation of 35 U.S.C. § 271, and has made, used, marketed, distributed, offered for sale, and/or sold products made by infringing processes and infringing products in this State, including within this District, and otherwise engaged in infringing conduct within or from this District. Such infringing products include, but are not necessary limited to those Cambria engineered quartz slab products identified in Exhibit 6. Such products, and products made by infringing processes, have been and continue to be marketed, offered for sale, sold, distributed, and used in this District, and the infringing conduct has caused, and continues to cause, injury to SQIP, including injury suffered within this District by unfairly competing with products lawfully made using SQIP's patented inventions. These are purposeful acts and transactions in this State and this District such that Cambria reasonably shown know and expect that it could be haled into this Court.

7.      Venue is proper in this District under 28 U.S.C. §§ 1391, and 1400(b) because Cambria has regular and established places of business (the facilities in Lewisville and The Colony). Further, job offerings on Cambria's website include a job located in The Colony. Further, Cambria has voluntarily filed as the plaintiff at least five patent infringement lawsuits in the State of Texas.

## FACTUAL BACKGROUND

8.      SQIP owns a portfolio of fifteen issued United States utility patents and an additional eighteen international patents, all directed to engineered natural quartz surface products used for various building purposes, such as kitchen and bathroom countertops, and methods for making such products.

4

9.      The Patents-in-Suit are a portion of SQIP's patent portfolio.

10.     Alex Xie is a member of SQIP.

11.     Alex Xie has a long history of innovation of methods for manufacturing natural quartz surface products. Further, Alex Xie has substantial experience in the use of methods for manufacturing natural quartz surface products in industry.

12.     Alex Xie is the sole inventor of the patents owned by SQIP, including the Patents-in-Suit.

13.     SQIP has licensed its patent portfolio, including the Patents-in-Suit, to a company called Elite Quartz Mfg LLC ("Elite Quartz"), which manufactures natural quartz surface products pursuant to at least some of SQIP's patent portfolio.

14.     Elite Quartz manufactures natural quartz surface products using the methods described in the Patents-in-Suit.

15.     The natural quartz surface products manufactured by Elite Quartz using the methods described in the Patents-in-Suit are sold and distributed in the United States through a company called Hirsch Glass Corp. d/b/a Spectrum Quartz ("Hirsch Glass") and a company called MS International, Inc. ("MSI").  Examples of Hirsch's products and MSI's products that are manufactured by Elite Quartz using one or more of the methods claimed in the Patents-in-Suit include products sold under the commercial names (i) Calacatta Miraggio Duo Quartz (MSI), (ii) Calacatta Miraggio Duo Quartz (MSI), (iii) Calacatta Miraggio Cielo Quartz (MSI), (iv) Calacatta Miraggio Gold Quartz (MSI), (v) Grandeur (Hirsch), (vi) Royal (Hirsch), (vii) Sterling AP (Hirsch), and (viii) Impeccable AP (Hirsch).

16.     Alex Xie is a shareholder in Hirsch Glass.

## THE PATENTS-IN-SUIT

17.     United States Patent No. 9,511,516 (the "'516 Patent"), titled "Method and Apparatus for Manufacturing Quartz Slab," was duly and legally issued by the United States Patent and Trademark Office on December 6, 2016 and names Alex Xie as the sole inventor.  A true and correct copy of the '516 Patent is attached as Exhibit 1.

18.     SQIP owns all substantial rights, title and interests in and to the '516 Patent, including the exclusive right and standing to bring suit with respect to any past, present, and future infringement.  The '516 Patent is valid, enforceable, and in full force and effect.

19.     United States Patent No. 10,376,912 (the "'912 Patent"), titled "Apparatus and Method for Depositing Color Into Cracks of a Moving Formed Quartz Slab To Create Veins in an Engineered Stone," was duly and legally issued by the United States Patent and Trademark Office on August 13, 2019 and names Alex Xie as the sole inventor.  A true and correct copy of the '912 Patent is attached as Exhibit 2.

20.     SQIP owns all substantial rights, title and interests in and to the '912 Patent, including the exclusive right and standing to bring suit with respect to any past, present, and future infringement.  The '912 Patent is valid, enforceable, and in full force and effect.

21.     United States Patent No. 10,730,806 (the "'806 Patent"), titled "Method and Apparatus for Forming Engineered Stone," was duly and legally issued by the United States Patent and Trademark Office on August 4, 2020 and names Alex Xie as the sole inventor.  A true and correct copy of the '806 Patent is attached as Exhibit 3.

22.     SQIP owns all substantial rights, title and interests in and to the '806 Patent, including the exclusive right and standing to bring suit with respect to any past, present, and future infringement.  The '806 Patent is valid, enforceable, and in full force and effect.

23.     United States Patent No. 10,843,977 (the "'977 Patent"), titled "Method and Apparatus for Forming Engineered Stone," was duly and legally issued by the United States Patent and Trademark Office on November 24, 2020 and names Alex Xie as the sole inventor.  A true and correct copy of the '977 Patent is attached as Exhibit 4.

24.     SQIP owns all substantial rights, title and interests in and to the '977 Patent, including the exclusive right and standing to bring suit with respect to any past, present, and future infringement.  The '977 Patent is valid, enforceable, and in full force and effect.

25.     United States Patent No. 9,707,698 (the "'698 Patent"), titled "Method and Apparatus for Forming Engineered Stone," was duly and legally issued by the United States Patent and Trademark Office on July 18, 2017 and names Alex Xie as the sole inventor.  A true and correct copy of the '698 Patent is attached as Exhibit 5.

26.     SQIP owns all substantial rights, title and interests in and to the '698 Patent, including the exclusive right and standing to bring suit with respect to any past, present, and future infringement.  The '698 Patent is valid, enforceable, and in full force and effect.

## CAMBRIA'S ACTIVITIES

27.     As described below, Cambria makes, uses, imports, distributes, supplies, markets, offers for sale, and/or sells Cambria branded products that infringe one or more claims of the Patents-in-Suit, including but not limited Cambria's engineered natural quartz surface products identified in Exhibit 6 (collectively, the "Accused Products").

28.     Those products identified in Exhibit 6 as the "Accused '516 Patent Products" are manufactured in a manner that uses one or more of the claimed methods described and claimed in the '516 patent.

29.     Those products identified in Exhibit 6 as the "Accused '912 Patent Products" are manufactured in a manner that uses one or more of the claimed methods described and claimed in the '912 patent.

30.     Those products identified in Exhibit 6 as the "Accused '806 Patent Products" are manufactured in a manner that uses one or more of the claimed methods described and claimed in the '806 patent.

31.     Those products identified in Exhibit 6 as the "Accused '977 Patent Products" are manufactured in a manner that uses one or more of the claimed methods described and claimed in the '977 patent.

32.     Those products identified in Exhibit 6 as the "Accused '698 Patent Products" are manufactured in a manner that uses one or more of the claimed methods described and claimed in the '698 patent.

33.     Cambria was aware of the '516 Patent and the '698 Patent no later than February 2018, at which time Hirsch Glass advised Cambria of the '516 Patent and the '698 Patent (See, Exhibit 7) and Cambria's response included the statement that "Cambria does not see any value to those patents, nor do we think those patents merit any further discussion amongst our clients." Exhibit 8.

34.     In February 2021, Cambria filed a patent infringement lawsuit against Hirsch Glass Corp. d/b/a Spectrum Quartz in the United States Federal Court for the Eastern District of Virginia (later transferred to the United States Federal Court for the District of New Jersey), in which Cambria relied on the '516 Patent as a basis for alleging that products sold by Hirsch Glass were made by methods that infringed claims in Cambria's asserted patents.

35.     Cambria was also aware of the '912 Patent, the '806 Patent and the '977 Patent the no later than December 2021, at which time Cambria requested that SQIP grant a license to its portfolio of patents, including the Patents-in-Suit, as part of a settlement offer to resolve Cambria's ongoing litigation against Hirsch Glass.

36.     In response to Cambria's request to license SQIP's portfolio of patents, Hirsch Glass's counsel requested that Cambria disclose the processes used by Cambria to manufacture the products for which Cambria sought a license.

37.     Cambria refused Hirsch Glass' Counsel's request for information concerning Cambria's manufacturing processes.

38.     In the fall of 2022, Cambria again requested SQIP to grant Cambria a license to SQIP's patent portfolio, including the Patents-in-Suit, as a component to a settlement offer to resolve the ongoing litigation between Cambria and Hirsch Glass.

39.     Again, Hirsch Glass' counsel requested that Cambria disclose its manufacturing processes used to make the products for which Cambria sought a license.

40.     Cambria refused Hirsch Glass' Counsel's request for information concerning Cambria's manufacturing processes.

41.     Cambria's repeated attempts to secure licenses to SQIP's full patent portfolio is indicative of Cambria's knowledge of the Patents-in-Suit and Cambria's knowledge that certain of its products infringe such patents.

## COUNT I
## INFRINGEMENT OF U.S. PATENT NO. 9,511,516

42.     SQIP incorporates by reference and realleges, as if fully set forth herein, all preceding paragraphs.

9

43.     As described below, in violation of at least 35 U.S.C. § 271(a), Cambria infringes and/or has infringed, directly or indirectly, and literally or under the doctrine of equivalents, at least claim 14 of the '516 Patent by importing, making, using, offering to sell, and/or selling the Accused '516 Patent Products without a license or permission from SQIP, including in this judicial district.

44.     Further, in violation of at least 35 U.S.C.  271(g), Cambria imports, offers to sell, sells, and/or uses within the United States the Accused '516 Patent Products, which are made by the process patented in at least claim 14 of the '516 Patent.  Prior to the sale of the Accused '516 Patent Products, the Accused '516 Patent Products are neither materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

45.     Claim 14 of the '516 Patent recites as follows:

> 14. A method comprising:
> supplying a first mixture of quartz and resin to an inner chamber of a mold;
>
> wherein the mold has a top opening which leads to the inner chamber, and the mold includes a first wall, a second wall, a third wall, and a fourth wall, and a bottom which enclose the inner chamber; and further comprising
>
> using a computer processor to controllably supply the first mixture to the inner chamber of the mold through a first region of the top opening but not through a second region of the top opening during a first state, and
>
> using the computer processor to controllably supply the first mixture to the inner chamber of the mold through the second region of the top opening, but not through the first region of the top opening during a second state.

46.     On information and belief, the Accused '516 Patent Products are made by a process of supplying a first mixture of quartz and resin to an inner chamber of a mold.  This is

shown by the pictures of each Accused '516 Patent Product set forth on Exhibit 6 and which are available on Cambria's website at www.cambriausa.com.

47.     Further, Cambria has alleged that the Accused '516 Patent Products are made by a process covered by the claims of Cambria's United States Patent No. 9,993,942 (the "'942 Patent"), which is attached hereto as Exhibit 9.  Cambria's '942 Patent states that "the mold 130 can be vertically oriented during the dispensation of the different particulate mineral mixes into the mold 130."  Exhibit 9, at 4:47-49.  Cambria's '942 Patent describes that the particulate mineral mixes dispensed into the mold "can comprise quartz material…that, when mixed with pigments and a resin binder and subsequently compressed and cured, provides a hardened slab product…". Exhibit 9, at 3:67-4:3.

48.     On information and belief, the Accused '516 Patent Products are made with a mold that has a top opening which leads to the inner chamber, and the mold includes a first wall, a second wall, a third wall, and a fourth wall, and a bottom which enclose the inner chamber.  Cambria's '942 Patent, with reference to Figure 1A (reproduced adjacent this paragraph) describes that the mold used in the process "can include a shell portion that at least partially defines a space (shown in dashed lines in FIG. 1A) for receiving the different particulate mineral mixes via an open upwardly facing opening 132 of the mold 130."  Exhibit 9, at 4:50-54.



49.     On information and belief, Cambria's Accused '516 Patent Products are made using a computer processor to controllably supply the first mixture to the inner chamber of the mold through a first region of the top opening but not through a second region of the top opening

11

during a first state. In particular, Cambria's Accused '516 Patent Products all include a first partial vein comprised of a first mixture that extends over a first portion, but not a second portion, of the length of the slab.

50.    On information and belief, Cambria's Accused '516 Patent Products are made using the computer processor to controllably supply the first mixture to the inner chamber of the mold through the second region of the top opening, but not through the first region of the top opening during a second state.  In particular, Cambria's Accused '516 Patent Products all include a second partial vein comprised of the first mixture that extends over the second portion, but not the first portion, of the length of the slab.

51.    Alex Xie has analyzed Cambria's Accused '516 Patent Products and concluded, based on the fact that the Accused '516 Patent Products each include at least a first partial longitudinal vein and a second partial longitudinal vein, both made from the same quartz/resin mixture, that do not overlap when viewed in cross-section, that it is highly likely Cambria's Accused '516 Patent Products were made using a process as described in claim 14 of the '516 Patent.

52.    Alex Xie's opinion is reinforced by Cambria's attempt to secure a license to the '516 patent in December 2021 and the fall of 2022, but its refusal to disclose the manufacturing process to Hirsch Glass' counsel.

53.    SQIP has been damaged as a result of the infringing conduct by Cambria alleged above.  Thus, Cambria is at least liable to SQIP in an amount that compensates SQIP for such infringement, which by law cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

54.     Cambria's infringement of SQIP's '516 Patent has caused, and will continue to cause, SQIP to suffer substantial and irreparable harm unless Cambria is enjoined by this Court pursuant to 35 U.S.C. §283.

55.     Cambria has been on notice of and has had actual knowledge of the '516 Patent since at least February 2018.

56.     Cambria has been aware that the Accused '516 Patent Products have been and continue to be made using a process that infringes the '516 Patent since at least December 2021 when Cambria sought a license to the '516 Patent as part of a proposed settlement in its lawsuit against Hirsch Glass.

57.     Cambria's infringement of the '516 Patent is, has been, and continues to be, willful, intentional deliberate, and/or in conscious disregard of SQIP's rights.  Cambria's willful infringement entitles SQIP to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
## INFRINGEMENT OF U.S. PATENT NO. 10,376,912

58.     SQIP incorporates by reference and realleges, as if fully set forth herein, all preceding paragraphs.

59.     As described below, in violation of at least 35 U.S.C. § 271(a), Cambria infringes and/or has infringed, literally or under the doctrine of equivalents, at least claim 1 of the '912 Patent by importing, making, using, offering to sell, and/or selling the Accused '912 Patent Products without a license or permission from SQIP, including in this judicial district.

60.     Further, in violation of at least 35 U.S.C.  § 271(g), Cambria offers to sell, sells, and/or uses within the United States the Accused '912 Patent Products, which are made by the

process patented in at least claim 11 of the '912 Patent.  Prior to the sale of the Accused '912

Patent Products, the Accused '912 Patent Products are neither materially changed by subsequent

processes, nor do they become a trivial and nonessential component of another product.

61.    Claim 11 of the '912 Patent recites as follows:

11. A method comprising:
causing a first portion of a slab to move vertically out of alignment
with an area of the slab surrounding the first portion of the slab and
thereby introducing a first crack in the first portion of the slab by
using a first device located between the first portion and a ground
surface to cause a force to be applied to the first portion of the slab;
and

depositing a first material having a color into the first crack of the
slab, so that the first crack deposited with the first material becomes
a vein having the color of the first material;

causing the first crack to close and the first portion of the slab to
move vertically back into alignment with the area of the slab
surrounding the first portion by no longer applying the force to the
first portion of the slab after the first material is deposited into the
first crack; and

wherein the slab is a damp particulate mixture.

62.    On information and belief, the Accused '912 Patent Products are made by a

process that includes causing a first portion of a slab to move vertically out of alignment with an

area of the slab surrounding the first portion of the slab and thereby introducing a first crack in

the first portion of the slab by using a first device located between the first portion and a ground

surface to cause a force to be applied to the first portion of  the slab.

63.    On information and belief, the Accused '912 Patent Products are made by a

process that includes depositing a first material having a color into the first crack of the slab, so

that the first crack deposited with the first material becomes a vein having a color of the first

material.

64.     On information and belief, the Accused '912 Patent Products are made by a process that includes causing the first crack to close and the first portion of the slab to move vertically back into alignment with the area of the slab surrounding the first portion by no longer applying the force to the first portion of the slab after the first material is deposited into the first crack.

65.     On information and belief, the slab that ultimately forms the Accused '912 Patent Products is in the form of a damp particulate mixture at the time force is applied to the first portion of the slab to introduce a crack in the first portion of the slab.

66.     Alex Xie has studied the Accused '912 Patent Products, and, based on his expertise, concludes that the nature of the cracks in the Accused '912 Patent Products indicate that a first portion of the slab, while the slab is in the form of a damp particulate mixture in the manufacturing process, receives pressure from below the slab from a device to push the first portion of the slab out of alignment with a surrounding portion of the slab, which creates randomized cracks in the slab into which a colorizing material is deposited to establish the contrasting crack in the finished product.

67.     In particular, the appearance of the cracks in the Accused '912 Patent Products are directionally random and of different sizes and shapes, which is indicative of the slab, while still in the form of a damp particulate mixture, being cracked by applying pressure to a first area from below the slab to cause it to be vertically out of alignment with the area surrounding the first area and to deposit coloring in the resultant cracks while the cracks remain open, i.e., before the pressure applied below the slab is relieved.

68.     Alex Xie's opinion is reinforced by Cambria's attempt to secure a license to the '912 patent in December 2021 and the fall of 2022, but its refusal to disclose the manufacturing process to Hirsch Glass' counsel.

69.     Cambria has been aware that the Accused '912 Patent Products have been and continue to be made using a process that infringes the '912 patent since at least December 2021 when Cambria sought a license to the '912 Patent as part of a proposed settlement in its lawsuit against Hirsch Glass.

70.     Cambria's infringement of SQIP's '912 Patent has caused, and will continue to cause, SQIP to suffer substantial and irreparable harm unless Cambria is enjoined by this Court pursuant to 35 U.S.C. §283.

71.     Cambria's infringement of the '912 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of SQIP's rights. Cambria's willful infringement entitles SQIP to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.


**COUNT III**
**INFRINGEMENT OF U.S. PATENT NO. 10,730,806**

72.     SQIP incorporates by reference and realleges, as if fully set forth herein, all preceding paragraphs.

73.     As described below, in violation of at least 35 U.S.C. § 271(a), Cambria infringes and/or has infringed, literally or under the doctrine of equivalents, at least claim 1 of the '806 Patent by importing, making, using, offering to sell, and/or selling the Accused '806 Patent Products without a license or permission from SQIP, including in this judicial district.

74.     Further, in violation of at least 35 U.S.C. § 271(g), Cambria offers to sell, sells, and/or uses within the United States the Accused '806 Patent Products, which are made by the process patented in at least claim 18 of the '806 Patent.  Prior to the sale of the Accused '806 Patent Products, the Accused '806 Patent Products are neither materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

75.     Claim 18 of the '806 Patent recites as follows:

18. A method comprising the steps of:
layering different types of composite material to form a layered composite material in an open top compartment, wherein each of the different types of composite material is layered by depositing each of the different types of material while being stirred resulting in an even layer of each of the different types of composite material, and multiple level layers of different composite material in the open top compartment;

compressing the layered composite material to form a layered compressed composite material;

disrupting the layered compressed composite material so that the layered compressed composite material is broken to form randomly re-oriented composite material fragments;

and compressing the randomly re-oriented composite material fragments after the step of disrupting the layered compressed composite material has ceased.

76.     On information and belief, the Accused '806 Patent Products are made by a process that includes layering different types of composite material to form a layered composite material in an open top compartment, wherein each of the different types of composite material is layered by depositing each of the different types of material while being stirred resulting in an even layer of each of the different types of composite material, and multiple level layers of different composite material in the open top compartment.

77.     On information and belief, the Accused '806 Patent Products are made by a process that includes compressing the layered composite material to form a layered compressed composite material.

78.     On information and belief, the Accused '806 Patent Products are made by a process that includes disrupting the layered compressed composite material so that the layered compressed composite material is broken to form randomly re-oriented composite material fragments.

79.     On information and belief, the Accused '806 Patent Products are made by a process that includes disrupting the layered compressed composite material so that the layered compressed composite material is broken to form randomly re-oriented composite material fragments.

80.     On information and belief, the Accused '806 Patent Products are made by a process that includes compressing the randomly re-oriented composite material fragments after the step of disrupting the layered compressed composite material has ceased.

81.     Alex Xie has studied the Accused '806 Patent Products, and, based on his expertise, concludes that it is highly likely that the Accused '806 Patent Products are made using the steps recited in at least claim 18 of the '806 patent, as recited above, based upon the shape, nature and overall appearance of the "swirls" in the product.

82.     Alex Xie's opinion is reinforced by Cambria's attempt to secure a license to the '806 patent in December 2021 and the fall of 2022, but its refusal to disclose the manufacturing process to Hirsch Glass' counsel.

83.     Cambria has been aware that the Accused '806 Patent Products have been and continue to be made using a process that infringes the '806 Patent since at least December 2021

when Cambria sought a license to the '806 Patent as part of a proposed settlement in its lawsuit against Hirsch Glass.

84.     Cambria's infringement of SQIP's '806 Patent has caused, and will continue to cause, SQIP to suffer substantial and irreparable harm unless Cambria is enjoined by this Court pursuant to 35 U.S.C. §283.

85.     Cambria's infringement of the '806 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of SQIP's rights. Cambria's willful infringement entitles SQIP to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV
## INFRINGEMENT OF U.S. PATENT NO. 10,843,977

86.     SQIP incorporates by reference and realleges, as if fully set forth herein, all preceding paragraphs.

87.     As described below, in violation of at least 35 U.S.C. § 271(a), Cambria infringes and/or has infringed, literally or under the doctrine of equivalents, at least claim 1 of the '977 Patent by importing, making, using, offering to sell, and/or selling the Accused '977 Patent Products without a license or permission from SQIP, including in this judicial district.

88.     Further, in violation of at least 35 U.S.C. § 271(g), Cambria offers to sell, sells, and/or uses within the United States the Accused '977 Patent Products, which are made by the process patented in at least claim 1 of the '977 Patent.  Prior to the sale of the Accused '806 Patent Products, the Accused '977 Patent Products are neither materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

89.     Claim 1 of the '977 Patent recites as follows:

1.  A method comprising the steps of:
    layering different types of composite material to form a layered
    composite material of a plurality of layers in an open top
    compartment, wherein each of the different types of composite
    material is layered by depositing each of the different types of
    composite material while being disrupted by at least one member
    resulting in a layer of composite material of a desired height for
    each of the different types of composite material of the layered
    composite material;

    wherein the at least one member causes the desired height of each
    layer of the plurality of layers of the layered composite material in
    the open top compartment;

    compressing the layered composite material to form a layered
    compressed composite material; and

    disrupting the layered compressed composite material so that the
    layered compressed composite material is broken to form
    randomly re-oriented composite material fragments.

90.     On information and belief, the Accused '977 Patent Products are made by a
process that includes layering different types of composite material to form a layered composite
material of a plurality of layers in an open top compartment, wherein each of the different types
of composite material is layered by depositing each of the different types of composite material
while being disrupted by at least one member resulting in a layer of composite material of a
desired height for each of the different types of composite material of the layered composite
material.

91.     On information and belief, the Accused '977 Patent Products are made by a
process wherein the at least one member causes the desired height of each layer of the plurality
of layers of the layered composite material in the open top compartment; compressing the
layered composite material to form a layered compressed composite material.

92.     On information and belief, the Accused '977 Patent Products are made by a process that includes compressing the layered composite material to form a layered compressed composite material.

93.     On information and belief, the Accused '977 Patent Products are made by a process that includes disrupting the layered compressed composite material so that the layered compressed composite material is broken to form randomly re-oriented composite material fragments.

94.     Alex Xie has studied the Accused '977 Patent Products, and, based on his expertise, concludes that it is highly likely that the Accused '977 Patent Products are made using the steps recited in at least claim 1 of the '977 patent, as recited above, based upon the shape, nature and overall appearance of the "swirls" in the product.

95.     Alex Xie's opinion is reinforced by Cambria's attempt to secure a license to the '977 patent in December 2021 and the fall of 2022, but its refusal to disclose the manufacturing process to Hirsch Glass' counsel.

96.     Cambria has been aware that the Accused '977 Patent Products have been and continue to be made using a process that infringes the '977 Patent since at least December 2021 when Cambria sought a license to the '977 Patent as part of a proposed settlement in its lawsuit against Hirsch Glass.

97.     Cambria's infringement of SQIP's '977 Patent has caused, and will continue to cause, SQIP to suffer substantial and irreparable harm unless Cambria is enjoined by this Court pursuant to 35 U.S.C. §283.

97.     Cambria's infringement of the '977 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of SQIP's rights. Cambria's willful

infringement entitles SQIP to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V
## INFRINGEMENT OF U.S. PATENT NO. 9,707,698

98.     SQIP incorporates by reference and realleges, as if fully set forth herein, all preceding paragraphs.

99.     As described below, in violation of at least 35 U.S.C. § 271(a), Cambria infringes and/or has infringed, directly or indirectly, and literally or under the doctrine of equivalents, at least claim 8 of the '698 Patent by importing, making, using, offering to sell, and/or selling the Accused '698 Patent Products without a license or permission from SQIP, including in this judicial district.

100.     Further, in violation of at least 35 U.S.C.  § 271(g), Cambria imports, offers to sell, sells, and/or uses within the United States the Accused '698 Patent Products, which are made by the process patented in at least claim 8 of the '698 Patent.  Prior to the sale of the Accused '698 Patent Products, the Accused '698 Patent Products are neither materially changed by subsequent processes, nor do they become a trivial and nonessential component of another product.

101.     Claim 8 of the '698 Patent recites as follows:

8.   A method comprising:

supplying a first material to a conveyor belt of a main conveyor device;

moving the first material by use of the conveyor belt;

supplying a second material on top of the first material, while the first material is on the conveyor belt to form a combination comprised of at least the first and second materials;

compressing the combination; and

stirring the compressed combination to form a first modified combination; and

compressing the first modified combination to form a compressed first modified combination.

102.    On information and belief, the Accused '698 Patent Products are made by a process that includes supplying a first material to a conveyor belt of a main conveyor device.

103.    On information and belief, the Accused '698 Patent Products are made by a process that includes moving the first material by use of the conveyor belt.

104.    On information and belief, the Accused '698 Patent Products are made by a process that includes supplying a second material on top of the first material, while the first material is on the conveyor belt to form a combination comprised of at least the first and second materials.

105.    On information and belief, the Accused '698 Patent Products are made by a process that includes compressing the combination.

106.    On information and belief, the Accused '698 Patent Products are made by a process that includes stirring the compressed combination to form a first modified combination.

107.    On information and belief, the Accused '698 Patent Products are made by a process that includes compressing the first modified combination to form a compressed first modified combination.

108.    Alex Xie has studied the Accused '698 Patent Products, and, based on his expertise, concludes that it is highly likely that the Accused '698 Patent Products are made using the steps recited in at least claim 8 of the '698 patent, as recited above, based upon the shape, nature and overall appearance of the "swirls" in the product.

109.    Alex Xie's opinion is reinforced by Cambria's attempt to secure a license to the '698 patent in December 2021 and the fall of 2022, but its refusal to disclose the manufacturing process to Hirsch Glass' counsel.

110.    Cambria has been aware that the Accused '698 Patent Products have been and continue to be made using a process that infringes the '698 Patent since at least December 2021 when Cambria sought a license to the '698 Patent as part of a proposed settlement in its lawsuit against Hirsch Glass.

111.    Cambria's infringement of SQIP's '698 Patent has caused, and will continue to cause, SQIP to suffer substantial and irreparable harm unless Cambria is enjoined by this Court pursuant to 35 U.S.C. § 283.

112.    Cambria's infringement of the '698 Patent is, has been, and continues to be, willful, intentional, deliberate, and/or in conscious disregard of SQIP's rights. Cambria's willful infringement entitles SQIP to increased damages under 35 U.S.C. § 284 and to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.


## <u>DEMAND FOR A JURY TRIAL</u>

SQIP demands a trial by jury on all issues triable of right by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.


## <u>PRAYER FOR RELIEF</u>

SQIP respectfully requests that this Court enter judgment in its favor and grant the following relief:

(i)    Judgment and Order that Cambria has infringed one or more claims of each of the Patents-in-Suit;

(ii)     Judgment and Order that Cambria must pay SQIP past and future damages under 35 U.S.C. § 284, including supplemental damages arising from any continuing, post-verdict infringement for the time between trial and entry of the final judgment, together with an accounting, as needed, as provided under 35 U.S.C. § 284;

(iii)    Judgment and Order that Cambria must pay SQIP reasonable and ongoing royalties on a go-forward basis after Final Judgment;

(iv)     Permanent injunction prohibiting Cambria from further infringement of the infringed claims of the patents-in-suit;

(v)      Judgment and Order that Cambria must pay SQIP's costs;

(vi)     Judgment and Order that the Court find this case exceptional under the provisions of 35 U.S.C. § 285 and order Cambria to pay SQIP its attorneys' fees;

(vii)    Judgment and Order that Cambria's infringement has been willful;

(viii)   Judgment and Order that all damages awarded to SQIP for Cambria's infringement be trebled pursuant to 35 U.S.C. §284; and

(ix)     Such other and further relief as the Court deems just and proper.


Dated:  March 13, 2023                SCHEEF & STONE, LLP
                                      113 E. Austin Street
                                      Marshall, TX  75670
                                      State Bar No. 18650410

                                      By:  _____
                                           Michael C. Smith
                                           Michael.Smith@Solidcounsel.com

                                      Attorney for Plaintiff, SQIP, LLC