UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| SQIP, LLC | § | |
| | § | |
| v. | § | CIVIL NO. 4:23-CV-202-SDJ |
| | § | |
| CAMBRIA COMPANY, LLC | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff SQIP, LLC ("SQIP") has sued Defendant Cambria Company LLC ("Cambria") for patent infringement. Cambria has filed its Motion to Transfer Venue Under 28 U.S.C. § 1404(a), (Dkt. #21), asking the Court to transfer this case to the District of Minnesota. The motion is opposed and has been fully briefed. Because the Court concludes that Cambria has demonstrated that the District of Minnesota is clearly a more convenient venue for this action, the motion will be granted.

### I. BACKGROUND

SQIP is a Florida company that specializes in engineering natural quartz surface products used for building purposes, such as kitchen and bathroom countertops. It owns a portfolio of patents on those products and methods for making them. SQIP alleges that Cambria has infringed two of SQIP's patents on manufacturing methods, specifically by importing, making, using, offering to sell, and/or selling products using the patents without a license or permission from SQIP, including in this judicial district. Cambria has asserted, and SQIP does not contest, that SQIP otherwise has no connection to this District.

Cambria is a competitor of SQIP. It manufactures quartz surface products for homes and businesses. Cambria has presented uncontested testimony that it is

1

headquartered in Minnesota and that the accused products are manufactured entirely at its manufacturing facility in Minnesota. Cambria has also provided uncontested testimony that, with the exception of one employee who resides in Seattle, Washington, all persons with nonpublic knowledge of Cambria's manufacturing processes live and work in Minnesota. Similarly, Cambria has confirmed, and SQIP does not contest, that all of Cambria's documents regarding any nonpublic aspects of Cambria's accused products and processes, including both paper and electronic materials, are located at Cambria's manufacturing facility and corporate offices in Minnesota. It is also undisputed that Cambria does not manufacture any products in the State of Texas and none of its executive team or corporate leadership resides in Texas.

Cambria does have a showroom in The Colony, Texas, and a sales and distribution center showroom in Lewisville, Texas. These facilities are not unique to Texas, as Cambria maintains such facilities throughout the country. It is undisputed that Cambria's showroom and distribution center in Texas have no involvement in manufacturing the accused products and no employees at these facilities have any involvement or unique knowledge of Cambria's manufacturing processes. Likewise, no documents regarding Cambria's accused processes are kept at its Texas facilities.

## II. LEGAL STANDARD

Section 1404(a) permits the transfer of civil actions for the convenience of the parties and witnesses and in the interest of justice to other districts or divisions where the plaintiffs could have properly brought the action. 28 U.S.C. § 1404(a). District courts have broad discretion in deciding whether to transfer a case under Section

1404(a), *In re Volkswagen of Am., Inc.* (*Volkswagen II*), 545 F.3d 304, 311 (5th Cir. 2008) (en banc), and Section 1404(a) motions are adjudicated on an "individualized, case-by-case consideration of convenience and fairness." *TravelPass Grp. v. Caesars Ent. Corp.*, No. 5:18-cv-153, 2019 WL 3806056, at *11 (E.D. Tex. May 9, 2019) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29, 108 S.Ct. 2239,101 L.Ed.2d 22 (1988)), *report and recommendation adopted*, 2019 WL 4071784 (E.D. Tex. Aug. 29, 2019). In patent cases, Section 1404(a) motions are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008).

The party seeking a transfer under Section 1404(a) must show good cause. *Volkswagen II*, 545 F.3d at 315. In this context, showing good cause requires the moving party to "clearly demonstrate that a transfer is for the convenience of parties and witnesses [and] in the interest of justice." *Id*. (cleaned up) (quoting 28 U.S.C. § 1404(a)). When the movant fails to demonstrate that the proposed transferee venue is "clearly more convenient" than the plaintiff's chosen venue, "the plaintiff's choice should be respected." *Id*. Conversely, when the movant demonstrates that the proposed transferee venue is clearly more convenient, the movant has shown good cause, and the court should transfer the case. *Id*. The "clearly more convenient" standard is not equal to a clear-and-convincing-evidence standard, but it is nevertheless "materially more than a mere preponderance of convenience." *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-CV-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019).

3

To determine whether a Section 1404(a) movant has demonstrated that the proposed transferee venue is "clearly more convenient," the Fifth Circuit employs the four private-interest and four public-interest factors first enunciated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). *Volkswagen II*, 545 F.3d at 315. The private-interest factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* (citation omitted). The public-interest factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (alteration in original) (citation omitted).

Although these factors "are appropriate for most transfer cases, they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Id.* (citation omitted). Moreover, courts are not to merely tally the factors on each side. *In re Radmax, Ltd.*, 720 F.3d 285, 290 n.8 (5th Cir. 2013). Instead, courts "must make factual determinations to ascertain the degree of actual convenience, if any, and whether such rises to the level of clearly more convenient." *Quest NetTech*, 2019 WL 6344267, at *7 (cleaned up) (holding that, where five factors were neutral, two weighed in favor of transfer, and one weighed "solidly" in favor of transfer, the movant had met its burden); *see also In re Radmax*, 720 F.3d at 290 (holding that courts abuse

4

their discretion when they deny transfer solely because the plaintiff's choice of forum weighs in favor of denying transfer).

## III. DISCUSSION

The threshold inquiry on a Section 1404(a) motion to transfer is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed." *In re Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004). "Any civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). The Court finds that venue would have been proper in the District of Minnesota. Cambria is a Minnesota company with its principal place of business in Minnesota, and there is no dispute that Cambria manufactured the accused products in Minnesota.

Having ascertained that this threshold requirement is met, the Court will analyze each of the private- and public-interest factors to determine whether Cambria has demonstrated that the District of Minnesota is a "clearly more convenient" forum for the instant action than the Eastern District of Texas.

### A. The Private Interest Factors

#### 1. Access to the Sources of Proof

When analyzing the first private-interest factor, courts interpret "sources of proof" to encompass "non-witness evidence, such as documents and other physical evidence." *In re Apple Inc.*, 979 F.3d 1332, 1339 (Fed. Cir. 2020); *accord Volkswagen II*, 545 F.3d at 316. Courts in this District have held that this factor weighs in favor

of transfer "when a majority of the tangible and documentary evidence is located in the transferee court's district." *Arnold v. Remington Arms Co.*, No. 6:16-CV-0074-RWS-KNM, 2017 WL 9285419, at *2 (E.D. Tex. Feb. 17, 2017) (collecting cases). In patent-infringement cases, "the bulk of the relevant evidence usually comes from the accused infringer." *In re Apple Inc.*, 979 F.3d at 1340 (quoting *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)). "Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *Id.*

Notwithstanding well-known advances in technology and the digitization of data, courts nonetheless continue to consider the relevance and importance of the physical location of these sources. *See Volkswagen II*, 545 F.3d at 316. Parties must specifically identify and locate sources of proof and explain their relevance. *See Utterback v. Trustmark Nat'l Bank*, 716 F.App'x 241, 245 n.10 (5th Cir. 2017); *AGIS Software Dev. LLC v. Huawei Device USA Inc.*, No. 2:17-CV-513, 2018 WL 2329752, at *5 (E.D. Tex. May 22, 2018). The Fifth Circuit has explained that a decreased inconvenience in access to proof due to technological advances "does not render this factor superfluous." *Volkswagen II*, 545 F.3d at 316. "Thus, the physical location of evidence—even if stored electronically—remains a relevant consideration for the convenience analysis. However, the realities of electronic retrieval and delivery is an established reality that must bear some weight even while not making this factor superfluous." *Japan Display Inc. v. Tianma Microelectronics Co. Ltd.*, No. 2:20-CV-283, 2021 WL 3772425 (E.D. Tex. Aug. 25, 2021) (cleaned up).

Cambria argues that this factor favors transfer because "all evidence and nonpublic documents regarding Cambria's accused manufacturing processes are in Minnesota." (Dkt. #21 at 6). To this end, Cambria submitted the sworn declaration of its Executive Vice President of R&D and Process Operations, Jon Grzeskowiak. He affirmed, and SQIP does not dispute, that all of Cambria's products, including the accused products, are manufactured exclusively in Minnesota; all research, design, and development for these products and the processes for manufacturing them also took place in Minnesota; third-party vendor testing occurred exclusively in Minnesota; and Cambria's documents concerning the research, development, implementation, marketing, and financial records related to the accused products are in Minnesota. (Dkt. #21–1 ¶¶ 4, 5, 7, 9). Cambria further maintains that it has no relevant documents in the Eastern District of Texas and that its distribution center and showroom in this District are uninvolved in Cambria's accused processes. (Dkt. #21 at 7). This is also undisputed.

SQIP disputes that the District of Minnesota provides better access to sources of proof because it understands, through the experience of its counsel in ongoing litigation with Cambria in another matter, that most of Cambria's records will likely be stored and/or produced electronically. (Dkt. #24 at 6). Even assuming this is correct, however, as the Court previously noted, the physical location of sources of proof remains relevant to deciding this factor.[1] *See Volkswagen II*, 545 F.3d at 315.

---

[1] SQIP cites *In re Planned Parenthood* for the proposition that "[w]hen a majority of evidence is electronic, the evidence is equally accessible in any forum." *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). To be precise, the quoted finding was made by the district court in that case. The Fifth Circuit merely concluded that

Given that all the sources of proof in this case are located in the District of Minnesota, and with the understanding that some or all of the documents may be stored electronically, the Court concludes that this factor favors transfer.

## 2. Availability of Compulsory Process to Secure the Attendance of Witnesses

The second private factor is the availability of compulsory process to secure the attendance of witnesses. *Volkswagen II*, 545 F.3d at 316. Federal Rule of Civil Procedure 45 allows courts to subpoena a nonparty witness to ensure attendance at trial "within 100 miles of where the person resides, is employed, or regularly transacts business in person." FED. R. CIV. P. 45(c)(1). As for party witnesses, a court may issue subpoenas "within the state where the person resides, is employed or regularly transacts business in person." *Id.* Because party witnesses almost invariably attend trial willingly, "[t]his factor is directed towards *unwilling* third-party witnesses." *C&J Spec Rent Servs., Inc. v. LEAM Drilling Sys., LLC*, No. 2:19-CV-79, 2019 WL 3017379, at *3 (E.D. Tex. July 10, 2019) (citing *Volkswagen II*, 545 F.3d at 316) (emphasis added).

---

"when 'the vast majority of the evidence [is] electronic, and therefore equally accessible in either forum[,]' this factor bears less strongly on the transfer analysis." *In Re TikTok, Inc.*, 85 F.4th 352, 358 (5th Cir. 2024) (quoting *In re Planned Parenthood*, 52 F.4th at 630); *see also In re Juniper Networks, Inc.*, 14 F.4th 1313, 1321 (Fed. Cir. 2021) (explaining that, "while electronic storage of documents makes them more widely accessible than in the past, that does not make the sources-of proof factor irrelevant"). In short, this factor is not rendered irrelevant when a majority of evidence is electronic rather than physical.

Here, neither party identifies any unwilling non-party witnesses that reside, are employed, or regularly transact business within 100 miles of the Eastern District of Texas. Therefore, this factor is neutral.

### 3.  Cost for Willing Witnesses

Private-interest factor three, which focuses on the "cost of attendance for willing witnesses," *Volkswagen II*, 545 F.3d at 315, "is probably the single most important factor in transfer analysis," *In re Genentech*, 566 F.3d at 1343 (quoting *Neil Bros. v. World Wide Lines, Inc.*, 425 F.Supp.2d 325, 329 (E.D.N.Y. 2006)).  It is obviously more convenient for witnesses to testify closer to home, and additional distance means additional travel, meal, and lodging costs, as well as additional time away from the witnesses' regular employment. *Volkswagen II*, 545 F.3d at 317. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Id.* (citation omitted).

The District of Minnesota is clearly more convenient for the majority of expected witnesses, including Cambria's corporate officers or designated representative witnesses. Except for a single employee who resides Seattle, Washington, all of Cambria's employees who were involved in developing and manufacturing the accused processes work in Cambria's manufacturing facility or its corporate offices located in Minnesota. SQIP's employees, based in Florida, must travel a similar distance regardless of whether the case is in Minnesota or Texas. Thus, because the Court "recogni[zes] that the bulk of relevant witnesses [are in

Minnesota], . . . [u]nder *Volkswagen'*s 100-mile threshold, the [District of Minnesota] is a clearly more convenient venue for most relevant witnesses in this case." *In Re TikTok, Inc.*, 85 F.4th at 362 (cleaned up). The cost of attendance for willing witnesses weighs in favor of transfer.

### 4. All Other Practical Problems that Make Trial Easy, Expeditious, and Inexpensive

When considering the private-interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 315. In particular, "the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-CV-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013).

SQIP argues that, because Cambria has previously brought five cases alleging patent infringement in the Western District of Texas, this factor weighs against transfer. This argument fails. None of the cases referenced by SQIP is before this Court, nor has Cambria previously filed suit or consented to venue in this District. Further, as Cambria notes, the lawsuits referenced by SQIP have all ended and none of them involved SQIP or the patents at issue in this case.

In regard to other considerations of judicial economy, nothing suggests that a transfer would be inefficient. This case is at an early stage, a scheduling order has not been issued, and this Court has not gained substantial familiarity with the case.

In sum, the parties have not raised, and the Court has not identified, any reason why judicial economy would be served—or, alternatively, frustrated—by

10

transferring this matter to the District of Minnesota. Private-interest factor four is therefore neutral.

## B. The Public-Interest Factors

The parties submit that the public-interest factors considering (1) familiarity of the forum with the law that will govern, and (2) conflicts of law, are neutral in the transfer analysis. The Court agrees. Both the Eastern District of Texas and the District of Minnesota are competent to resolve patent-infringement disputes. *See, e.g., Odom v. Microsoft Corp.*, 596 F.Supp.2d 995, 1003–04 (E.D. Tex. 2009) ("[B]oth this Court and the District of Oregon are equally capable of applying patent law."). And no conflict of laws issues have been presented in this matter.

The Court now addresses the remaining public-interest factors concerning court congestion and local interests.

### 1. Court Congestion

The first public-interest factor concerns "the administrative difficulties flowing from court congestion." *Volkswagen II*, 545 F.3d at 315. In the transfer analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *In re Genentech, Inc.*, 566 F.3d at 1347.

Citing the same federal administrative records, the parties take differing views on whether the court congestion factor supports transfer. Cambria argues that this factor favors transfer or, at worst, is neutral because the median time from filing to disposition of civil cases in the District of Minnesota, as of March 2023, is 6.2 months,

11

compared to 8.7 months in the Eastern District of Texas. SQIP, on the other hand, notes that the average time to trial is faster in the Eastern District of Texas than in the District of Minnesota. Specifically, SQIP notes that, as of March 2023, the median time from filing to trial is 19.0 months in the Eastern District of Texas and 40.5 months in the District of Minnesota.

Given that the data on the relative speed of case-resolution as between this District and the District of Minnesota is currently mixed, and recognizing that this is the most speculative factor in the transfer analysis, the Court concludes that this factor is neutral.

### 2. Local Interests

The second public-interest factor, which focuses on the local interest in having localized interests decided at home, "most notably regards not merely the parties' significant connections to each forum writ large, but rather the significant connections between a particular venue and the events that gave rise to a suit." *Def. Distributed v. Bruck*, 30 F.4th 414, 435 (5th Cir. 2022) (cleaned up). Important considerations include the location of the injury, witnesses, and the plaintiff's residence. *Id.* (citing *Volkswagen II*, 545 F.3d at 317–18). As the Fifth Circuit has made clear, "the place of the alleged wrong is one of the most important factors in venue determinations." *Id.* (cleaned up).

The District of Minnesota has a greater localized interest in this case than the Eastern District of Texas. Cambria is headquartered in Minnesota, the events giving rise to the suit occurred in the District of Minnesota, and all of Cambria's likely witnesses are there. Further, the accused processes were designed, developed, and

manufactured in the District of Minnesota, and Cambria's distribution center and showrooms in this District—which are just two of forty-one total showrooms—are not involved with the accused infringement, and therefore do not create a local interest.[2] Few, if any, of the events giving rise to the infringement claim occurred in the Eastern District of Texas. *See In re Juniper Networks, Inc.*, 14 F.4th at 1320 (finding that plaintiff's status as a Texas-based entity was not entitled to much weight, as its presence was recent and relatively insubstantial).

Aside from Cambria's limited presence, there is nothing connecting the case to this District. On the other hand, the place of the alleged wrongs, namely the development and manufacturing of the accused processes, all occurred in the District of Minnesota, which "shifts the center of gravity" of this action to the District of Minnesota. *HD Silicon Sols.*, 2021 WL 4953884, at *6. For all these reasons, the local interest factor weighs in favor of transfer.

*   *   *   *

Three of the eight private- and public-interest factors weigh in favor of transfer, and none of the factors weighs against transfer. A motion to transfer venue should be granted if the moving party shows that one venue is "clearly more convenient" than the other. *Genentech*, 566 F.3d at 1342. The Court, having considered the facts and law, concludes that the District of Minnesota is clearly the more convenient venue to resolve this action than the Eastern District of Texas.

---

[2] SQIP claims that the two showrooms located in this District "likely account for a significant portion of Defendant's total sales." (Dkt. #24 at 9). But this is purely speculative and may not even be correct.

## IV. CONCLUSION

It is therefore **ORDERED** that Defendant Cambria Company, LLC's Motion to Transfer Venue Under 28 U.S.C. § 1404(a), (Dkt. #21), is **GRANTED**. It is further **ORDERED** that the instant action is hereby **TRANSFERRED** to the United States District Court for the District of Minnesota.

It is further **ORDERED** that Defendant Cambria Company, LLC's Motion to Stay Pending Resolution of Motion to Transfer, (Dkt. #22), is **DENIED as moot**.

**So ORDERED and SIGNED this 29th day of March, 2024.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE